IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-60292

Summary Calendar
_____

THOMAS LOGAN,

Plaintiff-Appellant,

v.

PENNACO HOSIERY, A Division of Danskin, Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(3:97-CV-103-B-A)
_____

March 23, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:*

Plaintiff-appellant Thomas Logan appeals the district

court's grant of summary judgment in favor of defendant-appellee

Pennaco Hosiery on Logan's claim under the Americans with

Disabilities Act, 42 U.S.C. §§ 12101-12213.  Because we conclude

that the district court relied upon improper summary judgment

* Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

evidence in holding that Pennaco Hosiery was entitled to summary judgment, we vacate the district court's order granting summary judgment and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Thomas Logan was employed by Pennaco Hosiery (Pennaco) as the company's Maintenance Service/Boiler.  He suffered an employment-related injury on September 4, 1994 when a heavy drum of synthetic oil fell on his leg.  Over the course of the next year, Logan recovered slowly.  Logan's physician, Dr. Earnest Lowe, concluded that Logan achieved maximum medical recovery from his injury on May 23, 1995.  Dr. Lowe gave Logan a permanent partial impairment rating of 20% as to his lower extremities and 8% as to his person as a whole.  According to Logan, "[h]e was restricted by his physician from lifting or carrying [i]n excess of 25 pounds[1] and from standing or walking more than four (4) hours in an eight (8) hour day."  Additionally, Logan indicates that he "was restricted to occasionally climbing, balancing, stooping and crouching, and could never kneel or crawl."   On September 12, 1995, Pennaco terminated Logan because he had exhausted his available medical leave.

On September 19, 1995, Logan filed a complaint against Pennaco with the Equal Employment Opportunity Commission (EEOC),

---

[1]  Dr. Lowe testified during his deposition that Logan was capable of lifting 50 pounds.  However, it is unclear from the record whether Logan became capable of lifting 50 pounds before or after his discharge.

asserting that his termination violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213.  On February 16, 1996, the EEOC issued Logan a right-to-sue letter, and Logan subsequently filed suit against Pennaco, alleging violations of the ADA, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the United States Constitution, and the Mississippi Constitution.

On October 25, 1996, Pennaco moved for partial summary judgment, and the district court granted Pennaco's motion, dismissing all of Logan's claims except his ADA claim.  On January 27, 1997, Pennaco moved for summary judgment on Logan's ADA claim, and the district court granted this motion as well. Logan timely filed a notice of appeal.  On appeal, he challenges only the district court's grant of summary judgment in favor of Pennaco on his ADA claim.

## II.  STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance." Texas Manufactured Housing Ass'n v. City of Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996), cert. denied, 117 S. Ct. 2497 (1997). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

### III.  DISCUSSION

In order to establish a prima facie claim under the ADA, a claimant must prove that "(1) he has a disability; (2) he was qualified for the job; and (3) an adverse employment decision was made because of his disability." Robinson v. Global Marine Drilling Co., 101 F.3d 35, 36 (5th Cir. 1996), cert. denied, 117 S. Ct. 1820 (1997).  The district court granted summary judgment in favor of Pennaco on Logan's ADA claim because it concluded that, as a matter of law, Logan was not qualified for the Maintenance Service/Boiler position.  An individual is qualified for his job for purposes of the ADA if he can perform the essential functions of the job either with or without reasonable accommodation.  See 42 U.S.C. § 12111(8); Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir. 1996).

In an answer to an interrogatory posited by Pennaco, Logan conceded that Pennaco's written job description of the Maintenance Service/Boiler position contained the essential functions of his position.  After commencement of the instant litigation, Pennaco Hosiery had one of its employees, Susan Alexander, prepare a Motion Analysis Summary, which purported to describe the type and degree of physical exertion required to perform the duties listed in Pennaco's written job description

4

for the Maintenance Service/Boiler position.  The Motion Analysis Summary provides the following general description of the Maintenance Service/Boiler position:

> [T]he operator is required to be continuously walking 99% of 8 hour work day.  During this time variations in bending, reaching, climbing, pushing and pulling and lifting will also occur.  Standing in one place may occur at some job sites but use of upper body will occur (bending, reaching, lifting).  Walking distance will exceed 5 miles daily and in most cases not more than 10 miles in 8 hour work day.  Sitting is very limited, usually to driving distance which is approximately 1% of daily duties.  Over a period of four 40 hour weeks the operator is continuously walking 98.3% of the time, while he may sit to drive 1.7% of the time.

The Motion Analysis Summary also describes many of the duties listed in the written job description as requiring the employee to lift up to 100 pounds.

Pennaco submitted the Motion Analysis Summary as an attachment to a declaration by Alexander.  Alexander's declaration states that she "formulated the study based on job descriptions of the position, interviews with the employee currently holding the position, Kevin Carpenter, interviews with the Maintenance Department Manager[,] Larry Taylor, and hours of observing Kevin Carpenter performing his duties."

Based in large part on the Motion Analysis Summary, the district court concluded that, as a matter of law, Logan was not qualified to perform duties associated with the Maintenance Service/Boiler position at Pennaco.  Specifically, the district court found that Logan had offered no summary judgment evidence

contravening the Motion Analysis Summary's conclusion that performance of the duties of the Maintenance Service/Boiler position required the employee to spend approximately 98% of each day on his feet as well as frequently climb and bend. The district court thus concluded that, as a matter of law, Logan was not qualified for his former position because he could not perform the physical requirements articulated in the Motion Analysis Summary without substantial violation of his medical restrictions.[2]

Logan argues that the district court erred in denying his

---

[2] The district court also noted that performance of the duties of the Maintenance Service/Boiler position required periodic heavy lifting. Specifically, it noted that the employee occupying the position was required to carry 50-pound bags of salt from a storage facility to the boiler room and pour them into the water system, tilt 700-pound drums of synthetic oil so that they could be emptied into one-gallon containers, and move 200-pound barrels of sulfuric acid from the storage facility to the boiler room. The district court acknowledged that Logan had indicated that he could perform these functions with reasonable accommodation. Specifically, he claimed that he could use a hand-held pump to transfer oil from the 700-pound drums, thereby eliminating the necessity of tilting the drums, and that he could transport the salt if Pennaco bought smaller bags or allowed him to pour the salt into smaller containers before transporting it. In his deposition and affidavit, Logan stated that only one barrel of sulfuric acid needed to be moved every day or two and that the timing of moving the barrels was not critical. He therefore argued that another employee could move the barrels of sulfuric acid. Because the district court concluded that medical restrictions on the time Logan may spend on his feet and restrictions on his ability to climb and bend precluded him from being qualified for the Maintenance Service/Boiler position, the court did not specifically address the reasonableness of the accommodations that Logan suggested would allow him to perform the essential functions of the position without the necessity of heavy lifting.

motion to strike Alexander's declaration and the attached Motion Analysis Summary on the grounds that (1) the declaration and Motion Analysis Summary contain hearsay that Pennaco has not demonstrated falls within any exception to the general rule barring the admissibility of hearsay evidence and (2) Alexander's declaration does not establish that she is an expert qualified to testify on the matters contained in the Motion Analysis Summary. The district court rejected these arguments, concluding that the contents of the Motion Analysis Summary did not constitute a statement of expert opinion, but rather constituted nothing more than a recitation of facts that Alexander personally observed. The district court did not expressly address Logan's hearsay objection but did conclude that the contents of the Motion Analysis Summary reflected Alexander's personal knowledge.

In determining whether a moving party is entitled to summary judgment, "only materials which were included in the pretrial record and that would have been admissible evidence may be considered." Stults v. Conoco, Inc., 76 F.3d 651, 654-55 (5th Cir. 1996). We review a district court's determination that information contained in the pretrial record is admissible evidence, and thus proper summary judgment evidence, for an abuse of discretion. See United States v. Torres, 114 F.3d 520, 526 (5th Cir.), cert. denied, 118 S. Ct. 316 (1997); Christophersen v. Allied-Signal Corp., 939 F.2d 1106, 1109 (5th Cir. 1991).

While not expressly addressing Logan's contention that the

7

Motion Analysis Summary contained hearsay, the district court implicitly rejected this argument by concluding that the Motion Analysis Summary "merely recit[ed] facts that [Alexander] observed." However, Alexander's declaration states that she prepared the Motion Analysis Summary based upon observation of Kevin Carpenter as he performed his Maintenance Service/Boiler duties <u>and based upon interviews with Carpenter and his supervisor, Larry Taylor</u>.

The statements made by Carpenter and Taylor to Alexander during her interviews with them clearly constitute hearsay. <u>See</u> FED. R. EVID. 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Rule 602 of the Federal Rules of Evidence establishes that a witness may testify only as to matters of which the witness has personal knowledge. <u>See</u> FED. R. EVID. 602. This rule prohibits a witness "from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it." <u>Id.</u> advisory committee note; <u>see</u> <u>also</u> <u>Rock v. Huffco Gas & Oil Co.</u>, 922 F.2d 272, 280 (5th Cir. 1991). Thus, to the extent that the Motion Analysis Summary merely recounts what Taylor and Carpenter told Alexander during their interviews--as opposed to what Alexander actually observed during her observations of Carpenter--it is inadmissible under the Federal Rules of Evidence and is therefore not competent summary judgment evidence.

8

Pennaco bore the burden of proving that Alexander had personal knowledge of the matters contained in the Motion Analysis Summary. First Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1576 (5th Cir. 1996); United States v. Davis, 792 F.2d 1299, 1304 (5th Cir. 1986). It failed to meet this burden because Alexander's declaration provided the district court with no way to determine what portions of the Motion Analysis Summary were based upon Alexander's personal observations of Carpenter and what portions were based solely upon her interviews with Carpenter and Taylor. The district court therefore abused its discretion in considering the Motion Analysis Summary as competent Summary Judgment evidence.[3]

## IV. CONCLUSION

Because the Motion Analysis Summary played such a substantial role in the district court's determination that no genuine issue of material fact existed as to whether Logan was

---

[3] We recognize that expert opinion testimony based on hearsay may be admissible. See FED. R. EVID. 703; United States v. Gresham, 118 F.3d 258, 266 (5th Cir. 1997), cert. denied, 118 S. Ct. 702 (1998). However, as noted supra, the district court expressly concluded that the contents of the Motion Analysis Summary did not constitute expert opinion. Moreover, even if the Motion Analysis Summary could be construed as an expression of expert opinion rather than a mere recitation of facts of which a lay witness would be capable, Pennaco has not established that Alexander is qualified as an expert based on her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Alexander's declaration simply states that she is employed by Pennaco as an "Engineering Analyst." Without any further description of her position or her education, Alexander's declaration is insufficient to establish her authority to offer expert testimony on any subject.

9

qualified for the Maintenance Service/Boiler position, we VACATE the district court's order granting summary judgment in favor of Pennaco on Logan's ADA claim and REMAND to allow the district court to determine in the first instance whether Pennaco is nonetheless entitled to summary judgment based on those portions of the pretrial record that constitute competent summary judgment evidence. The district court is, of course, free to order additional submissions from the parties on the propriety of summary judgment, including affidavits or declarations more clearly indicating what portions of the Motion Analysis Summary are derived from Alexander's personal knowledge.

VACATED and REMANDED. Costs shall be borne by Pennaco.