United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 13, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

Nos. 03-20562
03-20565
03-20579

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JESUS LORENZO AYALA (03-20562),
MANUEL LORENZO GARCIA (03-20565),
ARMANDO PEREZ (03-20579),

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Texas, Houston
H-02-CR-36

_____

Before JOLLY, DAVIS, and JONES, Circuit Judges,

W. EUGENE DAVIS, Circuit Judge:[*]

Jesus Lorenzo Ayala ("Ayala"), Manuel Lorenzo Garcia
("Garcia"), and Armando Perez ("Perez") challenge their sentences
imposed following their entry of guilty pleas to possession with
intent to distribute and conspiracy to possess with intent to

_____

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

distribute marijuana. They argue that evidence the district court relied on from a government informant used to compute the amount of marijuana in question was unreliable and insufficient to satisfy the preponderance of the evidence standard. Because the district court judge did not hear testimony from the informant, after the government argued that the informant was not credible, we conclude the district court erred in relying on that evidence. We, therefore, vacate the sentences and remand these cases for resentencing and to give the district court an opportunity to examine the credibility of the government informant.

I.

Terry Blevins ("Blevins") was involved in a drug trafficking scheme with Ayala, Garica, and Perez in which he used his 1993 Ford pick-up truck to transport marijuana between Roma and Houston, Texas. The truck bed had a false bottom and hidden compartment that could be used to conceal contraband. According to Blevins, Garcia and/or an associate Eduardo Aguirre ("Aguirre") would contact Blevins by telephone and explain that they needed him to make a delivery. Blevins would drive his truck to a restaurant in Roma, contact Garcia and Aguirre to tell them he was arriving, and hand off his truck to Ayala and Perez. Blevins would stay in a Roma motel, the Roma Inn or MVP Motel, until his truck was returned to him. He would then drive his truck, now full of marijuana, to the instructed location in Houston, followed by Garcia, and/or

2

Aguirre, Ayala, and Perez in a separate vehicle.

According to Blevins, upon arriving in Houston he would hand the truck over to Ayala and Perez who would drive the truck to an undisclosed location and unload the drugs.  Defendants would then return the truck to Blevins and pay him $3,000 for his services.

Blevins informed the Drug Enforcement Agency ("DEA") of this drug trafficking operation, and on December 18-19, 2001 the  DEA surveilled an entire transaction between Blevins and defendants. Agents followed the truck from Roma to Houston while Blevins was driving, and then followed the truck to the residence where the drugs were unloaded by defendants.  The DEA agents arrested defendants along with other associates who were helping to unload the contraband.  Later that evening the DEA obtained a warrant to search the residence where the drugs were unloaded and seized 384.7 kilograms of marijuana and numerous scales, bags, and cellophane that could have been used to divide up the contraband for sale.[1]

On January 18, 2002 Ayala, Garcia, Perez, and additional coconspirators were indicted for possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(vii), and 18 U.S.C. § 2, and conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846.  Each defendant

---

[1]Agents also seized 61 kilograms of marijuana from the freezer of a trailer on the property pursuant to a consensual search.  It could not be determined, however, whether those drugs came from the defendants in this case.

pleaded guilty to both counts of the indictment on October 18, 2002. Subsequently, the United States Probation Office prepared a presentence investigation report for each of the defendants. The report recommended approximating "the quantity of the controlled substance [involved in the case]" thus enhancing the defendants' sentences, because the amount of contraband "seized d[id] not reflect the scale of the offense[.]" U.S.S.G. § 2D1.1. cmt. n. 12.

In making this approximation the PSR primarily relied upon the testimony of informant Blevins. Blevins asserted that he was asked to make a delivery twice a week from June or July 2001 to September 2001 and once a week after September 11, 2001. The DEA agents investigation also revealed that Blevins had stayed at the Roma Inn or MVP Motel a total of ten times from September to December 2001. The DEA further determined in its investigation that Blevins's Ford Truck was able to carry 453.6 kilograms of marijuana. The probation officer also learned that Blevins was detained in a November 2001 traffic stop in which a state trooper discovered Blevins's pickup truck's hidden compartment and seized a small quantity of loose marijuana found there. Based upon this information the probation officer estimated that Blevins had made eight additional deliveries of 384 kilograms each before the delivery resulting in arrest, for a total of 3461.9 kilograms of marijuana. This total was used in computing the base offense levels in the PSR.

The defendants objected to the PSR arguing that the

4

information from Blevins, who was then a confidential informant, was not reliable and that the estimates of the amount of marijuana transferred in the past were overly speculative. The government also challenged the PSR objecting to the use of historical quantities of marijuana in the computation of the defendants' base offense levels since it believed that Blevins was deceitful and unreliable and that the details of prior deliveries had not been corroborated by sufficient information and investigation. As such the government did not believe that the approximated amounts were supported by proof by a preponderance of the evidence.

The judge, upon hearing testimony of one of the DEA agents but *not* Blevins, overruled both the government's and defendants' objections to the PSR and sentenced all defendants based upon the quantities set forth in the PSR.

In this appeal, defendants argue that the district court erred in accepting the PSR's estimates of drug quantity over both the government's and defendants' objections because the amounts of marijuana had not been established by a preponderance of the evidence. The defendants ask us to vacate their sentences and remand the cases for resentencing. The government now argues, contrary to its position before the district court, that the district court did not err by adopting the PSR over the parties' objections thus enhancing the base offense level with the increased amounts testified to by Blevins.

II.

The sentencing guidelines require the court to approximate the amount of drugs at issue in a case where either there has been no drug seizure or the amount seized does not reflect the scale of the offense. *United States Sentencing Guidelines* § 2D1.1, cmt. n. 12. Estimates of the amount of drugs in controversy are fact questions which must be decided to determine relevant conduct under the guidelines. We review such findings for clear error. *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998); *United States v. Torres*, 114 F.3d 520, 527 (5th Cir. 1997).

The government must prove facts relevant to sentencing, like the drug quantity estimate in this case, by a preponderance of the evidence. *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998). Thus, the issue becomes whether the district court clearly erred in finding by a preponderance of the evidence that 3461.9 kilograms of marijuana is the amount of marijuana at issue in this case.

Defendants' primary arguments focus on the fact that the government conceded below that it could not prove the estimated and enhanced drug quantities by a preponderance of the evidence because of the unreliability of the informant Blevins. The defendants assert both that it is the government's burden to prove relevant conduct by a preponderance of the evidence and that the district court erred in ignoring the government's objection. They argue

further that the government is judicially estopped from now supporting the district court's drug quantity estimate.

We are not convinced by the defendant's arguments as presented. There is nothing about the government's concession *per se* that would preclude the district court from adopting the drug quantity estimate in the PSR. Courts are not bound by government concessions. *Alexander v. United States*, 390 F.2d 101, 108 (5ᵗʰ Cir. 1968); *United States v. Shelton*, 325 F.3d 553, 560 & n.10 (5ᵗʰ Cir. 2003). Nor are we bound by the government's earlier concessions via judicial estoppel. Courts have frowned upon application of the doctrine of judicial estoppel in the criminal context and we see no reason to bind the government to its earlier concession. *See Nichols v. Scott*, 69 F.3d 1255, 1272 & n.33 (5ᵗʰ Cir. 1995). As such we decline to vacate defendants' sentences based purely upon the government's objections to the PSR below.

We do find, however, that the district court's estimate of the amount of drugs at issue was clearly erroneous. The district court refused to hear Blevins's live testimony despite the government's assertion that the informant had repeatedly lied to them while assisting the government in other cases. Instead the court discounted this information and accepted the probation officer's account in the PSR.

The government points out that some corroborating evidence was presented supporting the PSR's findings. DEA Agent Nelson

testified that he believed Blevins was a reliable informant in this case despite his deceit in other cases where he served as an informant. The probation officer uncovered hotel receipts reflecting ten visits by Blevins to Roma, Texas, which corresponded to Blevins's account of the smuggling transactions. The government also produced evidence of Blevins's November 2001 arrest in which the police discovered small amounts of loose marijuana in the secret compartment in Blevins's truck. But without Blevins's testimony, this evidence has little or no probative value. When the prosecutor in this case, who had extensive contacts with Blevins, and while acting as an officer of the court, explained why Blevins could not be trusted, we conclude the district court erred in crediting Blevins's information without hearing his testimony. Accordingly, we find that the district court clearly erred in finding by a preponderance of the evidence that defendants were responsible for 3,461.9 kilograms of marijuana.

III.

For the reasons stated above we vacate defendants' sentences and remand to the district court for resentencing. The court may sentence defendants either on the quantity of drugs seized or hear Blevins' testimony and sentence defendants based on the court's evaluation of Blevins' credibility with respect to any drug quantities in addition to the drugs seized.

We, therefore, vacate defendant's sentences and remand this

8

case to the district court for further proceedings consistent with this opinion.

VACATED.

REMANDED.