United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 22, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-41579

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAIME ALVAR CARVAJAL,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

4:03-CR-109-4

Before JONES, Chief Judge, and SMITH and STEWART, Circuit Judges.

PER CURIAM:[*]

Jamie Carvajal and nine other defendants were indicted for conspiracy to manufacture,

distribute, or possess with intent to manufacture, distribute or dispense illegal drugs. Seven of the

defendants pleaded guilty, while three, including Carvajal, went to trial. Carvajal was convicted by

the jury and sentenced by the district court pre-*Booker*. Carvajal appeals on the basis of evidentiary

errors, amendment and variance of the indictment, possible witness tampering and collusion,

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

insufficiency of the evidence, and sentencing errors. We affirm Carvajal's conviction and remand his case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).

## I. FACTUAL AND PROCEDURAL HISTORY

Beginning in 2001, the Drug Enforcement Administration (DEA) began investigating possible drug trafficking in Dallas, Texas, based on the information of Keith Bridger, a friend of Carvajal's who became a DEA informant based on a desire to "get out" of the drug scene. Bridger specifically provided information to the DEA about a drug dealer named Agron Perkovic. Because he knew that Carvajal was involved with Perkovic, Bridger urged his friend to cooperate with the investigation in order to protect himself from criminal charges.

Carvajal met with DEA agents at least twice, and the agents asked Carvajal to contact them if he had any useful information, although the agents later testified that they did not believe Carvajal was being truthful with them. Based on the arrests of Perkovic and others resulting from Bridger's information, it became obvious to the DEA that Carvajal was a major participant in the same drug ring as Perkovic, especially after Perkovic sold Carvajal 1000 ecstasy pills the day before Perkovic's arrest. Carvajal supplied Perkovic with methamphetamine, cocaine, and marijuana during 2001 and 2002. Other witnesses testified extensively about drug deals with Carvajal as well.

During this same time period, Carvajal was receiving shipments of drugs transported by Michael Shawn Mayes. Mayes was arrested near San Antonio, Texas, in September of 2002 while transporting 40 pounds of marijuana from McAllen, Texas, to Dallas, Texas, allegedly for Carvajal. In cooperation with Texas authorities, Mayes called Carvajal after he was arrested to talk about the

delivery of the marijuana. During this conversation, which was recorded, Carvajal stated that he owned the marijuana and that he was "the backbone of this organization." At issue in part in this appeal is the extent to which these events are connected to the charged conspiracy.

While the investigation of Carvajal was ongoing in the Eastern District of Texas, another investigation related to his dealings with Mayes was ongoing in the Southern District of Texas. On June 12, 2003, Carvajal and nine other defendants were indicted in the Eastern District on charges of being involved in a conspiracy related to illegal substances. Two months later, Carvajal was separately indicted in the Southern District for the events related to Mayes's transport of marijuana.

Seven of the defendants in the Eastern District case pleaded guilty, but Carvajal did not and was convicted by a jury on March 16, 2004. The government moved to admit at trial in the Eastern District evidence, including a tape-recorded conversation between Mayes and Carvajal, a transcript of that conversation, and the thirty-eight pounds of marijuana that Mayes was transporting ("Mayes evidence"), that was the subject of the indictment in the Southern District. The government argued that the Mayes evidence was evidence of the conspiracy charged in the Eastern District. Carvajal objected, arguing that the evidence was extrinsic evidence not allowed under FED. R. EVID. 404(b). The district court admitted the evidence because the indictment covered the years 1999-2003 and mentioned Carvajal's activities with "others unknown" to the grand jury.

In addition to the recording of Carvajal's conversation with Mayes, the government also produced many witnesses against Carvajal, including Bridger and Perkovic. These witnesses implicated Carvajal in multiple drug transactions during the years at issue in the indictment. Perkovic testified about his many transactions with Carvajal involving marijuana, ecstasy, cocaine, and methamphetamine. Bridger corroborated this testimony.

3

Carvajal was convicted by the jury and sentenced by the district court under the then-mandatory United States Sentencing Guidelines on November 4, 2004, to 262 months imprisonment, five years supervised release, and a $100 special assessment. The indictment against Carvajal in the Southern District of Texas was dismissed after his conviction in the Eastern District. Carvajal filed a timely appeal that was dismissed for lack of prosecution. This court reinstated Carvajal's appeal on September 29, 2005.

## II. DISCUSSION

### A. Evidence from the Southern District of Texas

Carvajal argues that the Mayes evidence is evidence of a conspiracy separate from the conspiracy for which he was indicted in the Eastern District. He claims several bases of error relying on this assumption. As a preliminary matter, the determination of how many conspiracies were proved at trial is a finding of fact within the province of the jury. *United States v. Morris*, 46 F.3d 410, 415 (5th Cir.), *cert. denied*, 515 U.S. 1150 (1995). We examine this finding with great deference, overturning it only if the evidence presented at trial would preclude reasonable jurors from finding a single conspiracy. *Id.* Having reviewed the trial record, we decline to disturb the jury's finding on this point because there was evidence presented to show that there was a common goal among all the participants of the single conspiracy found by the jury and because the interactions of Carvajal and Mayes were beneficial to the conspiracy charged in the indictment. *Id.*; *see also United States v. Faulkner*, 17 F.3d 745, 761-62 (5th Cir.), *cert. denied*, 513 U.S. 870 (1994).

We now consider each of Carvajal's specific enumerations of error. First, Carvajal argues that the Mayes evidence should have been excluded by the district court under FED. R. EVID. 404(b) because it was extrinsic evidence that was unfairly prejudicial to him. The district court ruled that

4

the Mayes evidence was intrinsic to the crime charged, and we review that ruling for abuse of discretion. *United States v. Torres*, 114 F.3d 520, 525-26 (5th Cir.), *cert. denied*, 522 U.S. 922 (1997).

"[E]vidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence." *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995), *cert. denied sub nom.*, *Campos Alvarez v. United States*, 516 U.S. 1136 (1996). The evidence of Carvajal's conversations and dealings with Mayes were intrinsic to the charged conduct because Mayes delivered drugs to Carvajal that he then sold to others, which was the conduct that was charged in the indictment. The government presented at trial a "logical hypothesis" about the evidence obtained from Mayes that connected that evidence directly to the charged behavior. *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir.), *cert. denied*, 525 U.S. 878 (1998). Therefore, this evidence was not "evidence of other crimes, acts or wrongs," FED R. EVID. 404(b), but evidence of Carvajal's involvement in the charged conspiracy. There was no abuse of discretion in admitting this evidence.

Because the Mayes evidence was intrinsic to the crime charged, we also reject Carvajal's argument that this evidence constituted a fatal variance in the indictment at trial. *United States v. Freeman*, 434 F.3d 369, 375 (5th Cir. 2005) ("Because the . . . evidence proved facts that were alleged in the indictment, there was no variance."). The indictment against Carvajal covered the time period of 1999-2003 and his activities with unindicted persons, meaning that Carvajal's interactions with Mayes in 2002 are within the scope of the charging language of the indictment. There was no danger of transference of guilt in this case because the evidence at trial was about one conspiracy:

the conspiracy charged in the indictment. *See, e.g., United States v. Morgan*, 117 F.3d 849, 858-60 (5th Cir.), *cert. denied*, 522 U.S. 987 (1997).

Carvajal also raised a constructive amendment of the indictment argument based on the introduction of the Mayes evidence, claiming that the district court's cautionary instruction on multiple conspiracies allowed the jury to infer any element of conspiracy based on the existence of a separate conspiracy. Because we find that the evidence Carvajal complains of was intrinsic evidence, there was no constructive amendment of the indictment because there was no separate conspiracy.

## B. FED. R. EVID. 615

Carvajal also alleges error under FED. R. EVID. 615 based on the testimony of witnesses that he believes colluded and violated the court's sequestration order. Carvajal argues that, during trial, several government witnesses, including Perkovic and Bridger, discussed their testimony in jail before they took the stand. Carvajal also claims to have overheard discussions in prison between some of his co-defendants that led him to believe that one of their girlfriends was attending the trial and relaying the testimony of witnesses to her boyfriend. The district court ruled that, because there was insufficient evidence to show that anyone discussed Carvajal, there was no violation of FED. R. EVID. 615. The district court did find that one of Carvajal's co-defendants may have been prejudiced by the comments, but his counsel decided not to seek any relief.

The district court held hearings on this issue and decided that a violation of the rule was not clearly made out and that any possible violation that had taken place caused no prejudice to Carvajal. We review the district court's determinations for abuse of discretion. *United States v. Green*, 293 F.3d 886, 891, *rehearing denied*, 48 F.App'x 919 (5th Cir. 2002). Even if a clear violation of Rule

6

615 is made out, a trial judge still has discretion to allow a witness who has violated the rule to testify. *United States v. Wylie*, 919 F.2d 969, 976 (5th Cir. 1990).

First, we find no abuse of discretion in the district court's finding that there was either no violation of the rule or that any violation of the rule was not prejudicial to Carvajal. The district court interviewed multiple witnesses on two separate occasions in response to complaints about rule violations but found that the defendants did not establish a violation of the rule. Although the district court did not interview all possible witnesses because one of Carvajal's co-defendants withdrew his Rule 615 objection, the record supports the finding that there was no violation at all. Secondly, even if there were a violation, we find that the district court did not abuse its discretion by finding that any colluded testimony would not affect Carvajal as the allegedly colluding witnesses were never accused of discussing him. Although Carvajal argues that the government portrayed him as a leader in the conspiracy, there was no Rule 615 objection by Carvajal's counsel on these grounds at trial. We find no plain error in the district court's determination that the testimony would not prejudice Carvajal. *United States v. Robles-Pantoja*, 887 F.2d 1250, 1256-57 (5th Cir. 1989) (applying plain error standard to a Rule 615 challenge on appeal).

## C. Sufficiency

Carvajal challenges the sufficiency of the evidence used to convict him based on an argument that, without the Mayes evidence and the evidence from "tainted" witnesses, the government did not meet its burden of proof to convict him. In reviewing a challenge to the sufficiency of the evidence, this court views all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *United States v. Carrion-Caliz*, 944

F.2d 220, 222 (5th Cir. 1991), *cert. denied*, 503 U.S. 965 (1992). In order to prove a conspiracy, the government must show beyond a reasonable doubt an agreement between two or more people to violate federal drug laws, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the agreement. *E.g., United States v. Kelley*, 140 F.3d 596, 606 (5th Cir.), *cert. denied*, 525 U.S. 908 (1998). Even if Carvajal were correct that the Mayes evidence was extrinsic or that there was a prejudicial violation of Rule 615, this court considers all the evidence presented to the jury when reviewing the sufficiency of the evidence. *See, e.g., United States v. Cuellar*, 441 F.3d 329, 332-33 (5th Cir. 2006). The government met its burden by introducing the testimony of multiple witnesses of Carvajal's participation in drug deals with them. The evidence is clearly sufficient to sustain Carvajal's conviction.

## D. Sentencing

Carvajal also raises three challenges to his sentence. First, he objects to the use of drug-quantity ranges in the verdict form and the imposition of his sentence based on these ranges rather than on a specific amount of drugs. Carvajal concedes that this challenge is foreclosed by this Circuit's precedent, *United States v. DeLeon*, 247 F.3d 593, 597 (5th Cir. 2001), and raises the issue to preserve it for review. Second, Carvajal objects to the district court's increasing his sentence based on the fact that he was an organizer of the conspiracy when this fact was not proved beyond a reasonable doubt. This challenge is also foreclosed by this Circuit's precedent, *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006); *see also United States v. Mares,* 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005), and Carvajal raises the issue only to preserve it for further review.

Finally, Carvajal raises a Fanfan error because the district court sentenced him according to the then-mandatory U.S. Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220 (2005). Carvajal preserved this objection in the district court, and the government concedes that on the record in this case it cannot show beyond a reasonable doubt that the district court's application of the Guidelines as mandatory did not affect Carvajal's sentence. *See United States v. Pineiro*, 410 F.3d 282, 285 (5th Cir. 2005). Therefore, we remand this case for resentencing in light of *Booker*.

## III. CONCLUSION

We affirm Carvajal's conviction and remand his case for resentencing.