UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8625
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                          versus

SALVADOR GARCIA, ABRAHAM CHAVEZ,
ELMA CEPEDA DE JOHNSON and
JULIAN RODRIGUEZ-RUCOBO,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court for the
                Western District of Texas
_____

(July 19, 1994)


Before GARWOOD and EMILIO M. GARZA, Circuit Judges and HEAD,[*]
District Judge.

GARWOOD, Circuit Judge:

        Defendants-appellants Salvador Garcia (Garcia), Abraham Chavez
(Chavez), Elma Cepeda de Johnson (Cepeda),[1] and Julian Rodriguez-
Rucobo (Rucobo) were convicted in the same proceeding of various
drug offenses related to the importation and distribution of
marihuana.  In this consolidated appeal, Chavez contends that the

_____

[*]     District Judge of the Southern District of Texas, sitting by
designation.

[1]     Garcia and Cepeda are husband and wife.

district court (1) erred by denying his motion to suppress; (2) improperly allowed two grams of marihuana to be admitted in evidence; and (3) abused its discretion by rejecting his requested lesser included offense instruction. Further, appellants assert that the district court erred by failing to grant a judgment of acquittal under the entirety of count one of the indictment rather than simply a portion thereof. We affirm.

## Facts and Proceedings Below

Appellants were convicted on September 29, 1992, for their participation in a large scale drug conspiracy.[2] The conspiracy involved the importation of marihuana across the United States-Mexico border for distribution in Denver, Colorado. The conspiracy was discovered as a result of a series of arrests, from June of 1990 to December of 1991, of individuals attempting to drive across the United States-Mexico border or through immigration checkpoints with marihuana hidden in their vehicles.[3] Information obtained from some of the individuals arrested and evidence discovered from searches of some of the vehicles linked these arrests and the importation of the marihuana to the Cepeda family.[4]

---

[2] The indictment charged sixteen individuals with various related drug offenses as members of the conspiracy. Of those sixteen, eight are fugitives, four are appellants in the instant appeal, three had all charges dismissed, and one was acquitted.

[3] As a result of these checkpoint and border stops, 12 individuals were arrested (including Garcia on June 28, 1990, and Rucobo on December 4, 1991) and approximately 935 grams of marihuana were seized.

[4] The government indicted several members of the Cepeda family as part of the conspiracy. Co-defendants charged with conspiracy, who are members of the Cepeda family include Garcia and Cepeda, Cepeda's brothers Eduardo, Ramon, Nolberto, Sergio,

On January 3, 1992, a federal grand jury in the El Paso Division of the Western District of Texas returned a four-count indictment against appellants and twelve other individuals. Under count one of the indictment, all defendants were charged with conspiring to possess marihuana with the intent to distribute and using a minor to conceal the crime in violation of 21 U.S.C. §§ 841(a)(1), 846, and 861(a)(2). Under count two, Garcia, Chavez, and Rucobo were charged with conspiring to import marihuana in violation of 21 U.S.C. §§ 952(a), 960(a), and 963. Under count three, Cepeda and Rucobo were charged with importing marihuana into the United States from Mexico in violation of 21 U.S.C. § 952(a). Under count four, Cepeda and Rucobo were charged with possession of marihuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On January 9, 1992, a search warrant was issued authorizing federal agents to search Chavez's home at 3841 Shoshone Street in Denver. The search warrant was issued based on the affidavit of Customs Agent Stephen Simer (Simer). Simer, an agent in the Denver office, stated that in February of 1991 he became involved in a joint investigation with the El Paso office concerning the illegal importation and distribution of marihuana. Simer declared that the investigation revealed that Chavez had conspired to import in excess of three hundred pounds of marihuana from Mexico and distribute it from his Denver residence. Simer testified that the

Rodolfo, and Cepeda's sister, Andrea. Sergio was acquitted, however. Eduardo, Ramon, Nolberto, Rodolfo, and Andrea are fugitives.

3

investigation disclosed that between May 1989 and December 1991 Chavez received approximately five loads of marihuana, each load weighing between thirty and sixty pounds. In addition, Simer stated that the investigation of Chavez was based on information provided by confidential informants, an analysis of long distance telephone records, and surveillance. Simer also stated that Chavez and several others had been indicted by a federal grand jury in El Paso on January 3, 1992, for their involvement in the importation/distribution organization, and a warrant for Chavez's arrest had been issued.[5]

On January 10, 1992, the search warrant was executed at Chavez's residence in Denver, Colorado. The warrant authorized a search for several items associated with drug trafficking including telephone records, ledgers, tally sheets, currency, narcotics, and distribution and packaging materials. During the search, customs agents found cigarette rolling papers, $21,557 in cash, and 2 grams of marihuana in the master bedroom. The agents also seized Chavez's truck and a map to Garcia's and Cepeda's El Paso home.

Appellants' jury trial began on September 22, 1992. At the end of the government's case, they moved for a judgment of acquittal as to count one. The district court granted the motion only as to paragraph (b) of that conspiracy count which relates to using a minor to conceal a crime.

---

[5]   The affidavit further explained that the government established the residence as Chavez's by (1) reviewing telephone service records issued in his name; (2) verifying that vehicles parked in front of the house were registered to Chavez; and (3) noting that surveillance of the residence revealed a man matching Chavez's physical description entering and leaving the residence.

4

During trial, the primary evidence presented against Chavez consisted of the testimony of Tomas Vasquez (Vasquez). Vasquez testified that he delivered three loads of marihuana from Chihuahua, Mexico, to Chavez's Denver home in the spring of 1991. Vasquez stated that, in Chavez's presence, he and Garcia unloaded the marihuana and took it into Chavez's home. Vasquez further testified that he overheard Chavez negotiating over the price of the loads and witnessed him giving Garcia money. In addition to Vasquez's testimony, the government introduced in evidence: (1) telephone records showing over 30 telephone calls between Chavez's house in Denver and Garcia's and Cepeda's house in El Paso and (2) the $21,557 in cash and the 2 grams of marihuana seized during the search of Chavez's home.

Testifying in his own defense, Chavez admitted to knowing Garcia and Cepeda. He stated that he and his wife were good friends with the couple and they often stayed in his home. Chavez admitted that he owned the two grams of marihuana found in his bedroom, but stated that it was for his own personal use. Chavez testified that he had purchased the two grams of marihuana from a third party at a Denver housing project. Chavez denied all of the accusations of Vasquez, and maintained that he never bought or sold large quantities of marihuana.

On September 29, 1992, the jury returned its verdict. Garcia was found guilty of conspiring to possess marihuana with intent to distribute and conspiring to import marihuana (counts one and two). Chavez was convicted of conspiring to possess marihuana with intent to distribute (count one), but acquitted of conspiring to import

5

marihuana (count two). Cepeda was convicted of conspiring to possess with intent to distribute (count one), but acquitted of importing marihuana into the United States (count three) and of possession of marihuana with intent to distribute (count four). Rucobo was found guilty of all four counts of the indictment.

On appeal, Chavez argues that the district court erred by denying his motion to suppress the evidence seized from his home. In addition, Chavez contends that the district court erred in denying his motion *in limine* to exclude the two grams of marihuana found in his bedroom, which he maintains were inadmissible and unduly prejudicial extrinsic evidence. Chavez also asserts that the district court erred by denying his request for a lesser included offense instruction for conspiracy to possess. Lastly, appellants argue that the district court erred by granting only a partial acquittal on count one.

**Discussion**

I.  Motion to Suppress

Chavez argues that the district court erred in refusing to suppress evidence seized from his home. This Court engages in a two-step review of a district court's denial of a motion to suppress evidence obtained pursuant to a search warrant. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992); *United States v. Webster*, 960 F.2d 1301, 1307 (5th Cir.), *cert. denied,* 113 S.Ct. 355 (1992). Generally, the first step is to determine whether the good faith exception to the exclusionary rule applies. *Satterwhite*, 980 F.2d at 320. The second step is to determine whether probable cause supported the warrant. *Id*. If the good

6

faith exception applies, this Court need not reach the probable cause issue. *Webster*, 960 F.2d at 1307.

A. Good Faith Exception

The good faith exception applies unless one of four exceptions is applicable.[6] Chavez argues that the third exception to the good faith doctrine applies in the instant case, *i.e.*, the affidavit is so lacking in any indicia of probable cause as to render an official's belief in its existence entirely unreasonable. This Court reviews the reasonableness of an officer's reliance *de novo*. *United States v. McKnight*, 953 F.2d 898, 905 (5th Cir.), *cert. denied,* 112 S.Ct. 2975 (1992).

B. Reasonableness of Officer's Reliance

Facts recited in Simer's affidavit which support the officer's belief that probable cause existed include: (1) Chavez was indicted on January 3, 1992, for his involvement in a conspiracy involving the importation and distribution of marihuana; (2) there was a warrant for Chavez's arrest; and (3) Chavez had been implicated in the conspiracy by information received from confidential informants, as well as police surveillance, and an

---

[6] Those exceptions are:

"(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid." *Id.* at 1307 n.4.

7

analysis of phone records. The affidavit also states that the investigation revealed the marihuana was being distributed from Chavez's home. A weakness with the affidavit, however, is that Simer does not expressly state what information was received from the confidential informants and his basis for reliance on such informants.

It is not enough for the supporting affidavit of a search warrant to state that a defendant is under indictment and that there was a warrant for his arrest. *See United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (noting "the fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime"). The affidavit must tend to show some nexus between the house to be searched and the evidence sought. *Id*. That nexus, however, "may be established either through direct observation or through normal inferences as to where the articles sought would be located." *Id*.

Chavez's indictment by a grand jury establishes that there was probable cause to believe that Chavez was involved in drug trafficking. Construing the affidavit in a "common sense and realistic manner," *see Freeman*, 685 F.2d at 948 (quoting *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977)), it was reasonable and logical for officers to believe that evidence of drug trafficking, such as ledgers and telephone records, would be found in Chavez's home. Moreover, reading the affidavit as a whole in a common sense manner indicates that the informant reported he had assisted in delivery of marihuana to Chavez's Denver residence.

8

We conclude that it was not entirely unreasonable for officers to believe that probable cause existed and that the warrant was valid.

## II.  Extrinsic Evidence

Chavez contends that the district court erred in admitting in evidence the two grams of marihuana found in his bedroom.  Chavez asserts that the evidence was extrinsic and its admission violated Federal Rule of Evidence 404(b).[7]

Chavez's contention is without merit.  "An act is not extrinsic, and Rule 404(b) is not implicated, where the evidence of that act and the evidence of the crime charged are inextricably intertwined." *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982).  The presence of marihuana in Chavez's home is relevant to the issue of his alleged involvement in a conspiracy to distribute marihuana from his home.  A jury could reasonably infer that the marihuana in Chavez's bedroom was part of larger loads of marihuana brought to his house for distribution.  The evidence admitted was not extrinsic to the offenses charged, thus consideration of its admissibility pursuant to Rule 404(b) is unnecessary.  *United States v. Lamp*, 779 F.2d 1088, 1095 (5th Cir.), *cert. denied,* 106 S.Ct. 2225 (1986).

## III.  Lesser Included Offense Instruction

Under Rule 31(c) of the Federal Rules of Criminal Procedure a defendant is entitled to a jury instruction on a lesser included offense if:  (1) the elements of the lesser offense are a subset of

---

[7]     Rule 404(b) states in part:  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

9

the elements of the charged offense and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. *United States v. Deisch*, 20 F.3d 139, 142 (5th Cir. 1994).

Chavez argues that the district court should have granted his request for a lesser included instruction on conspiracy to possess because conspiracy to possess is a lesser included offense and his testimony that he purchased the two grams of marihuana for his personal use from a third party would support a jury's finding him guilty of the lesser offense.

A. Statutory Elements Test

It is undisputed that under the statutory elements test, conspiracy to possess is a subset of the elements of conspiracy to possess with intent to distribute. *See United States v. White*, 972 F.2d 590, 596 (5th Cir. 1992), *cert. denied,* 113 S.Ct. 1651 (1993). However, the statutory elements test is only a test of exclusion. A defendant is not automatically entitled to a lesser included instruction simply because the lesser offense satisfies the statutory elements test. The defendant must also establish there is evidence which rationally supports convicting the defendant of the lesser offense while acquitting him of the greater offense.

B. Evidence at Trial

Chavez asserts that a jury could rationally find him guilty of conspiracy to possess based on his testimony that he purchased the two grams of marihuana from a third party.

The lesser offense Chavez testifies he committed does not in any way relate to the offense charged in the indictment. Chavez

10

was indicted for conspiring, in the Western District of Texas, with the co-defendants to possess and distribute marihuana. Yet, Chavez's testimony concerns a different offense committed on a different occasion. The offense Chavez admits to committing was confined to the Denver, Colorado, area and did not involve any of his co-defendants or alleged co-conspirators. Chavez's purchase of marihuana from a Denver housing project is a separate and distinct crime. A defendant is not entitled to a lesser included offense instruction simply because he admits to committing a lesser offense at a different time with other persons.[8] *See United States v. Seni*, 662 F.2d 277, 285 (4th Cir. 1981), *cert. denied,* 102 S.Ct. 1453 (1982) (finding defendants were not entitled to lesser included offense instruction because the lesser offense alleged was a separate offense). To convict Chavez of the conduct described in his testimony would be to convict him of an offense with which he was not charged and for which he had no notice that he was being tried.

Further, the evidence at trial does not show Chavez to be guilty of conspiracy to possess in respect to his claimed acquisition of the two grams of marihuana at a Denver housing project. To prove a conspiracy to possess, the government would have to prove that Chavez agreed in that instance with one or more persons to knowingly possess the two grams of marihuana. "The buy-

---

[8]     Similarly, if a defendant charged with assaulting a named victim with a knife testifies that he never assaulted the named victim at all, but did assault someone else at another time and place without a knife, he would not on the basis of such testimony be entitled to a lesser included offense instruction on simple assault.

11

sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction." *United States v. Townsend*, 924 F.2d 1385, 1394 (7th Cir. 1991). "'In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective.'" *Id*. (citation omitted). Chavez's testimony indicates his guilt of simple possession, but not of conspiracy to possess, with respect to his claimed acquisition of the two grams at a Denver housing project.

Thus, Chavez was not entitled to an instruction on conspiracy to possess as a lesser included offense.

IV. Partial Acquittal on Count One

Appellants argue that the district court erred by granting only a partial judgment of acquittal on count one. They assert that count one charged only a conspiracy to violate 21 U.S.C. § 861(a)(2), which proscribes use of a minor to avoid detection or apprehension of an offense. Appellants contend that the district court's grant of an acquittal on the portion of count one relating to the minor (paragraph (b)) removed an essential element of the only offense charged in that count. We disagree.

The indictment alleged:

**"COUNT ONE**
(21 U.S.C. §§ 846, 841(a)(1), 861 (a)(2)

That commencing on or about May 1, 1989, and continuing thereafter, up to and including on or about December 4, 1991, in the Western District of Texas and elsewhere, Defendants [naming them] willfully and knowingly conspired, combined, confederated, and agreed together, and with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

12

(a) to possess a quantity of marihuana, a Schedule I Controlled Substance, with intent to distribute same, contrary to Title 21, United States Code, section 841(a)(1);

(b) and each of the above defendants being a person of at least eighteen years of age at the time of the commission of this charged conspiracy did use, induce, and coerce a person under eighteen years of age to assist in avoiding detection for their unlawful activities, including importation and the possession with intent to distribute marihuana, a Schedule I Controlled Substance [21 U.S.C. §§ 841(a)(1) and 952(a)].

All in violation of Title 21, United States Code, Section 846."

An indictment may charge in one count a single conspiracy to violate more than one substantive criminal statute. *United States v. Duvall*, 846 F.2d 966, 975 n.8. (5th Cir. 1988). Count one of the indictment clearly charged the defendants with a single conspiracy in violation of 21 U.S.C. § 846. Paragraphs (a) and (b) of the indictment represent the *two* illegal objects of the conspiracy, namely, using a minor to conceal a crime in violation of 21 U.S.C. § 861(a)(2) and possessing marihuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). We reject the contention that only one object offense, the violation of section 861(a), was charged in count one. That count's initial paragraph alleges conspiracy; there follow the two object offenses, set out in subparagraphs (a) and (b) respectively; finally, in a separate paragraph, the conspiracy statute is referenced. The district court in withdrawing consideration of violations of section 861(a)(2) from the jury, withdrew consideration of only one of the two illegal objects of the conspiracy. Count one, as it remained, still charged an offense.

13

"'When a conspiracy to violate two statutes is alleged, the jury may find the defendant guilty if they believe beyond a reasonable doubt that he or she conspired to violate either one of the statutes.'" *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983) (citations omitted).  The district court's grant of acquittal on one of the alleged underlying substantive offense objectives of the conspiracy did not preclude the jury from convicting the appellants for conspiring to commit the other alleged object offense.  Having determined to grant an acquittal as to paragraph (b) of count one, the district court was not obliged to dismiss or grant an acquittal as to the balance of count one.

## Conclusion

Appellants' appeal presents no reversible error, and their convictions and sentences are

AFFIRMED.

14