**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 11, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-40609

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO RICARDO, BRIAN LEE
COSSIN, ARMANDO GONZALEZ,

Defendants-Appellants.

No. 05-40848

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO RICARDO,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellants Rodolfo Ricardo and Brian Lee Cossin appeal their convictions for possession of

marijuana with intent to distribute and conspiracy, and appellant Armando Gonzalez appeals his

conviction for conspiracy to possess with intent to distribute marijuana. The government contends that the appellants, along with two other men, participated in a scheme to transport and distribute drugs using a tractor-trailer rig. The appellants allege numerous grounds of error at trial. We affirm the judgment and uphold the appellants' convictions.

## I. FACTUAL AND PROCEDURAL HISTORY

After some prior observation by a government informant, law enforcement officers began following a tractor-trailer in south Texas, on September 9, 2003. The tractor-trailer drove from Sullivan City, Texas, to Brownsville, Texas, around 2 p.m. to pick up a shipment. The tractor-trailer then headed west back to Sullivan City, a circumstance that the officers found suspicious because the tractor-trailer should have headed north out of the Rio Grande Valley in order to deliver its shipment to Miami, Florida.

The tractor-trailer, driven by Ricardo and Cossin, arrived in Sullivan City around 7 p.m. Ricardo and Cossin parked the tractor-trailer in the back of a gas station in the area. From the parking lot of a nearby school, the officers and their informant observed the tractor-trailer, noting that a maroon car pulled into the parking lot in front of the tractor-trailer. The car stayed at the gas station for a few seconds and then left, and the tractor-trailer followed the car. The officers followed the tractor-trailer, heading north, but stopped in fear of detection when the maroon car pulled off to the side of the road.

The officers lost track of both the maroon car and the tractor-trailer at this point, around 8 p.m., and began searching every side street in the area. During this search, the officers first noticed a black Escalade truck being driven by Armando Gonzalez. The officers moved to another road but

2

again encountered the Escalade, which sat at an intersection, leading the officers to believe the driver was waiting to see where they were going. The officers again changed course in fear of detection.

At around 9:45 p.m., the informant sighted the tractor-trailer, followed by a black Escalade truck, on a road near the gas station. The tractor-trailer returned to the gas station, and the informant saw that it was driven by Francisco Quintana, one of the appellants' co-defendants who pled guilty to the charges against him. The maroon car also returned to the gas station, driven by Miguel Ortega, the final co-defendant. Cossin and Ricardo got out of the maroon car, then got into the tractor-trailer and left. Quintana got into the maroon car.

While Quintana, Ortega, Cossin, and Ricardo were at the gas station, law enforcement officers continued to follow the Escalade, which made a U-turn and headed away from the gas station. The Escalade then headed back to the gas station, where the tractor-trailer and the maroon car were pulling out of the parking lot, and the three vehicles traveled the same direction, seemingly in a group. Law enforcement officers decided to coordinate stops of all three vehicles.

The tractor-trailer was stopped for speeding because it was traveling 60 miles per hour in a 55 mile-an-hour zone. Ricardo was driving the tractor-trailer and told the officer that he was not speeding. He turned his license and logbook over to the officer. Ricardo stated that he and Cossin were looking to buy a tractor-trailer rig and were headed to the Silver Spur truck stop where they believed some vehicles were for sale. When the officer spoke to Cossin, he confirmed this statement. The officer decided to check Ricardo and Cossin's licenses to make sure there were no outstanding tickets or warrants.

The dispatch officer then told the officer at the scene that there were no outstanding tickets or warrants for Ricardo and Cossin, although each of them had prior criminal charges. The officer

3

gave Ricardo a warning, told him they were "clear," and asked him if he had any more questions. Ricardo thanked the officer and told him they would not speed again. The officer then asked Ricardo if he could search the tractor of the tractor-trailer, and Ricardo agreed. The officer then looked at the seal on the trailer and noticed tool marks on it. He asked for consent to remove the seal and search the trailer, and Ricardo agreed. The officer broke the seal and searched the trailer, finding sealed bags of what he suspected was cocaine but was actually marijuana. The estimated value of the shipment was $292,500. Ricardo and Cossin were arrested at the scene.

After the tractor-trailer was stopped, the Escalade sped up, traveling over 90 miles per hour. The officer pursuing the car believed that the Escalade was trying to flee. The Escalade exited the interstate, looped around several local roads while maintaining speeds of 70-80 miles per hour, and then returned to the highway. With the help of other officers, Gonzalez was eventually stopped in the Escalade for speeding and was arrested after the marijuana was discovered in the tractor-trailer. Quintana and Ortega were stopped in the maroon car in another location and also arrested. In their car were roosters labeled with Gonzalez's name. Ortega stated in his plea colloquy that he bought the roosters from Gonzalez.

Before trial, the district court explained to the defendants that if they perjured themselves on the stand, they would be eligible for a sentencing enhancement. The court also told the defendants that it was the practice of all the district court judges in the area to enhance a defendant's sentence based on this factor if he testifies about a material matter and the jury later finds him guilty. All three of the defendants decided not to testify. During the trial, a tape of the traffic stop of Ricardo and Cossin was admitted. The portion of the tape where a dispatch officer related Ricardo and Cossin's prior charges was played before the jury as well. After a jury trial, Ricardo and Cossin were

4

convicted of possession of marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute. Gonzalez was convicted only of conspiracy.

## II. DISCUSSION

A. Sufficiency of the Evidence

Ricardo, Cossin, and Gonzalez all appeal the sufficiency of the evidence against them. In reviewing a challenge to the sufficiency of the evidence, this court views all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *United States v. Carrion-Caliz*, 944 F.2d 220, 222 (5th Cir. 1991). In conducting this review, we accept all credibility choices and reasonable inferences made by the jury, and the standard remains the same whether the evidence is direct or circumstantial. *United States v. Nixon*, 816 F.2d 1022, 1029 (5th Cir. 1987).

To sustain a conviction for possession of marijuana with intent to distribute, the government must prove beyond a reasonable doubt "(1) knowing (2) possession of marijuana (3) with intent to distribute it." *United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990). In order to prove a conspiracy, the government must show beyond a reasonable doubt an agreement between two or more people to violate federal drug laws, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the agreement. *E.g., United States v. Kelley*, 140 F.3d 596, 606 (5th Cir. 1998).

Although the appellants contend either that there is an innocent explanation for their actions, *United States v. Sacerio*, 952 F.2d 860, 864 (5th Cir. 1992), or that the evidence of guilt and innocence are equal, *United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002), we do not

agree. Generally, when a defendant is found transporting drugs in such a way that there is "a fair assumption that a third party might have concealed the controlled substances in the vehicle" without the defendant's knowledge, we have required some additional evidence showing "a consciousness of guilt on the part of the defendant." *Diaz-Carreon*, 915 F.2d at 954. Here, the government presented evidence that Ricardo and Cossin provided implausible explanations to questions about why they were willing to pay $5000 a month in rent on a tractor-trailer that went unused for long periods of time. The government also presented evidence that even after they picked up merchandise for delivery, Ricardo and Cossin still did not head toward their final destination. Additionally, Cossin's story about the purpose of their presence at the gas station changed several times. Ricardo also denied that the tractor-trailer had ever been out of his and Cossin's possession, although law enforcement officers saw Ricardo give control of the vehicle to Quintana at the gas station. Based on the above evidence, the government met its burden to show Ricardo and Cossin's knowledge of the presence of illegal substances in the tractor-trailer. The evidence was sufficient to sustain their convictions.

Gonzalez also contends that there was insufficient evidence to connect him to the conspiracy. However, the government presented evidence that Gonzalez was seen in his truck following the tractor-trailer on at least two occasions. After the tractor-trailer was pulled over, Gonzalez began driving erratically, and a reasonable jury could draw the inference that this erratic driving was an attempt to evade police after his co-conspirators were caught. Finally, when stopped by the authorities, Gonzalez told inconsistent stories and claimed not to know any of the defendants, despite the fact that roosters with tags bearing his name were found in the maroon car with Ortega and

Quintana. Based on this evidence, the government met its burden of proof and established the factual bases for Gonzalez's conviction by sufficient evidence.

B. Suppression of Evidence

Ricardo argues that the search of his tractor-trailer was in violation of the Fourth Amendment because his consent was obtained during an unlawful detention. We review the factual findings of the district court for clear error, and legal conclusions are reviewed de novo. *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). The initial stop was justified under *Terry v. Ohio*, 392 U.S. 1 (1968). A traffic stop complies with the dictates of the Fourth Amendment when the stop is justified at its inception and when the actions taken by law enforcement officers during the stop are reasonably related in scope to the circumstances that justified the stop initially. *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994). The initial stop of Ricardo was justified by his speed, and the officer's true motivation in conducting the stop is irrelevant to this analysis, *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Ricardo does not contest the validity of the initial stop; instead, he argues on appeal that the stop extended beyond its initial justification when the officer continued to detain him after giving him a warning. We review this claim raised for the first time on appeal for plain error. *See, e.g., United States v. Maldonado*, 42 F.3d 906, 912 (5th Cir. 1995). For relief to be granted under plain error review, an appellant must show (1) error (2) that is plain and (3) that affects substantial rights. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005). Generally, to show that an error affected substantial rights, an appellant must show the outcome of the proceedings would have been different but for the error. *Mares*, 402 F.3d at 521 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

If all three of these requirements are met, a court may exercise its discretion to grant relief only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 520.

In *United States v. Sanchez-Pena*, this court considered a very similar challenge. Sanchez-Pena was pulled over after driving at a low speed on the shoulder of the road. After a dispatch officer confirmed that there were no outstanding warrants or tickets on Sanchez-Pena's record, the officer returned his license and insurance card. 336 F.3d at 440. The officer then asked Sanchez-Pena if he would drive down the road to a checkpoint so a dog could sniff his car. Sanchez-Pena agreed, and drugs were discovered in his car at the check point. Sanchez-Pena challenged the submission of this evidence, arguing that his consent to the dog sniff was not valid because it was based on the officer's illegal detention of him after the completion of the legitimate traffic stop. This court disagreed, finding that the encounter between the officer and Sanchez-Pena was consensual because the officer returned his license and insurance documentation before asking him if he would proceed to the check point.

Similarly in this case, the traffic stop had ended before the officer asked Ricardo for permission to search his tractor-trailer. The officer handed Ricardo all of his documentation, including his warning citation, and told him and Cossin that they were "clear." Ricardo then began talking to the officer, promising not to speed any more. In response, the officer asked for permission to search the tractor-trailer. The evidence of record supports a finding that the consent was given during a consensual encounter between the officer and Ricardo after the officer returned Ricardo's license. Accordingly, the district court did not plainly err in failing to suppress the marijuana on the theory that the stop was unconstitutionally prolonged.

8

C. Prior Charges

Ricardo and Cossin object for the first time on appeal to the admission of prior charges against them into evidence via the video recording of their traffic stop. The dispatch officer read these charges to the officer on the scene, and the recording device clearly picked up these charges. This evidence was clearly wrongly admitted under Fed. R. Evid. 404(b). The evidence was neither relevant to an issue other than the defendants' character, nor was it shown that its probative value was not substantially outweighed by its prejudicial effects. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

Despite the fact that the admission of this evidence was plain error, there is no relief for the appellants because they have not shown that the admission of this evidence affected their substantial rights as required when an objection is not raised at the district court level. *See Mares*, 402 F.3d at 521 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Because the prosecution did not emphasize these prior charges in any way during trial and because the evidence against the appellants was strong, the jury likely disregarded the prior charges, meaning that the outcome of the trial would not have been different but for this error. We find that this error, though plain, did not affect the defendants' substantial rights.

D. Perjury Enhancement

All three of the appellants appeal on the basis of the district court's statements regarding the application of U.S. Sentencing Guideline § 3C1.1, which allows for an increase of a defendant's offense level if he

> willfully obstructed or impeded, or attempted to obstruct or impede, the
> administration of justice during the course of the investigation, prosecution, or

9

> sentencing of the instant offense of conviction, and . . . the obstructive conduct related
> to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely
> related offense.

*Id*. The appellants did not object to the district court's statements at trial; therefore, our review is for plain error. *Mares*, 402 F.3d at 520; *United States v. Phipps*, 319 F.3d 177, 189 n.14 (5th Cir. 2003) (noting that even errors not susceptible to harmless error review are reviewed under the plain error standard if not objected to in district court). The appellants contend that the district court impermissibly chilled their constitutional right to testify through the court's explanation of the sentencing enhancement. The court stated, "FYI if he testifies and is convicted—if he testifies that he didn't commit this crime and, of course, if the jury finds that he did, then I find that he perjured himself . . . . I certainly know that all the District Judges in this courthouse add an additional two points when a defendant has perjured himself by testifying to his innocence, his factual innocence, and the jury determines that the facts were contrary to what was stated from him." Although the court acknowledged that there might be exceptions to his practice, he never gave any indication that he would conduct an independent review of the evidence.

The Supreme Court held in *United States v. Dunnigan*, 507 U.S. 87 (1993), that this sentencing enhancement did not deny a defendant his right to testify but also required that a district court make "findings to support all the elements of a perjury violation" before the enhancement can be properly applied. *Id.* at 97. Simply basing the enhancement on the jury's verdict is improper. *See United States v. Laury*, 985 F.2d 1293, 1309 & n.20 (5th Cir. 1993); *see also United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004); *United States v. Harris*, 352 F.3d 362, 366 (8th Cir. 2003);

*United States v. Desimone*, 119 F.3d 217, 230 (2d Cir. 1997); *United States v. Smith*, 62 F.3d 641, 647-48 & n.3 (4th Cir. 1995).

The district court's statements in this case came very close to the line of improperly implying that a perjury enhancement would be based entirely on the jury's verdict without any independent findings by the court. This practice is troubling, and it could be an error under *Dunnigan*. We emphasize that due caution, as noted in *Dunnigan* and the previously cited cases, should be exercised when the district court contemplates applying the perjury sentencing enhancement. However, it is not a plain error in this case because the district court never directly stated that he would definitely apply the sentencing enhancement based entirely on the jury's verdict. Such explanations of the application of this sentencing enhancement should, however, be clearer in the future.

Even if this were a plain error, in light of the substantial amount of evidence that the prosecution presented against the appellants, we find that if this error had not occurred, the outcome of the trial would not have been different. *Mares*, 402 F.3d at 521 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). We also note, that although Ricardo and Gonzalez stated that they wanted to testify at the trial, the record does not clearly indicate that they would have testified but for the explanation of the sentencing enhancement. Without a stronger record on this point, we find that the district court's comments did not affect the defendants' substantial rights. Therefore, under a plain error standard, there is no relief for the appellants.

E. Other Arguments

Ricardo and Cossin challenge for the first time on appeal the district court's delivery of a deliberate ignorance instruction to the jury. They argue that this instruction was inappropriate because there was no evidence presented at trial to support it. We review this claim for plain error.

11

*Mares*, 402 F.3d at 520.  A deliberate ignorance instruction "is proper where the evidence shows (1) subjective awareness of a high probability of illegal conduct, and (2) purposeful contrivance to avoid learning of the illegal conduct."  *United States v. Threadgill*, 172 F.3d 357, 368 (5th Cir. 1999) (citing *United States v. Cavin*, 39 F.3d 1299, 1310 (5th Cir. 1994)).

This record could arguably support the giving of a deliberate ignorance instruction because the circumstances in this case–particularly Quintana's decision to accompany Ricardo and Cossin to south Texas and his possession of the loaded tractor-trailer for several hours in Sullivan City–were so suspicious that, in light of Ricardo's and Cossin's claims of ignorance, their failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge.  *See, e.g., United States v. Lara-Velasquez*, 919 F.2d 946, 953 (5th Cir. 1990).  However, an equally plausible argument could be made that, while Cossin and Ricardo claimed ignorance, "the evidence reveals just the opposite, that the defendants knew that their conduct was criminal and took elaborate measures to hide it," *Threadgill*, 172 F.3d at 369, thus rendering the deliberate ignorance instruction unjustified.  Resolving this issue is unnecessary, however, because the giving of a deliberate ignorance instruction is harmless error where substantial evidence of actual knowledge was presented, as happened in this case.  *Id.* (citing *United States v. Cartwright*, 6 F.3d 294, 301 (5th Cir. 1993), *cert. denied*, 513 U.S. 1060 (1994)).  Therefore, the deliberate ignorance instruction did not affect the defendants' substantial rights, and there is no relief from any possible error.

Gonzalez contends that the district court erred in failing to admit statements that exculpated Gonzalez made by Ortega's attorney at the plea colloquy.  Specifically, Ortega's counsel stated that Ortega only knew Gonzalez because he purchased some roosters from him.  Gonzalez argued at trial that these statements should be admitted under the former testimony exception, Fed. R. Evid.

804(b)(1), and the residual hearsay exception, Fed. R. Evid 807. We review the district court's rulings for abuse of discretion. *United States v. Torres*, 114 F.3d 520, 525-26 (5th Cir.), *cert. denied*, 522 U.S. 922 (1997). The government had no opportunity at the plea colloquy to question Ortega about these statements, and therefore, Rule 804(b)(1) does not apply to these statements. We find no exceptional circumstances or particular guarantees of trustworthiness that would support the use of the residual exception to admit these statements. *United States v. Walker*, 410 F.3d 754, 757 (5th Cir.), *cert. denied*, 126 S. Ct. 633 (2005); *United States v. Phillips*, 219 F.3d 404, 419 & n.23 (5th Cir. 2000). Therefore, the district court did not abuse his discretion by refusing to admit the evidence under these two rules.

Gonzalez contends for the first time on appeal that Ortega's statements were statements against penal interest and should have been admitted under Fed. R. Evid. 804(b)(3). We review this challenge for plain error only. *Mares*, 402 F.3d at 520-21. The statements that Gonzalez seeks to admit are not actually inculpatory as to Ortega. While much of Ortega's plea statement is inculpatory, the statements at issue are not admissible despite the fact that they are part of a generally inculpatory statement because they themselves are not inculpatory. *Williamson v. United States*, 512 U.S. 594, 600-01 (1994). There was no plain error in not admitting the statements under Rule 804(b)(3).

Finally, Ricardo argues that the cumulative errors in this case warrant reversal. *United States v. Villarreal*, 324 F.3d 319, 328 (5th Cir. 2003). While there were errors in this case, these errors do not provide a sufficient basis to warrant reversal, and we therefore decline to reverse on the basis of cumulative errors.

### III. CONCLUSION

13

For the above reasons, we AFFIRM the appellants' convictions.