# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2011

No. 10-31198

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MIRANDA SIERRA, also known as Mandi,

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CR-202-1

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Miranda Sierra was convicted of one count of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. She timely appeals her conviction, and we AFFIRM.

## FACTS AND PROCEEDINGS

Sierra was charged in an indictment with one count of conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and two counts of possession with

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31198

intent to distribute five grams and fifty grams of methamphetamine, respectively, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment alleged that Sierra conspired with her co-defendants, Susan Underwood and Jimmie Underwood ("Susan" and "Jimmie" respectively, and "the Underwoods" collectively), and "other persons known and unknown to the grand jury." The Underwoods pleaded guilty, but Sierra proceeded to trial. A jury convicted Sierra on all three counts.

On appeal, Sierra raises three arguments: (1) the evidence was insufficient to support her convictions; (2) the district court plainly erred in admitting evidence regarding the drug ledgers found in her car; and (3) the district court plainly erred in admitting photographs depicting a syringe recovered from her car.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Sierra contends that the evidence was insufficient to show that she conspired to possess with intent to distribute fifty grams or more of methamphetamine or that she possessed methamphetamine with intent to distribute it on the dates charged in the indictment.

### A. *Standard of Review*

After the government presented its case in chief, Sierra moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, but she failed to renew that motion after presenting her defense. "Where a defendant fails to renew his motion at the close of all the evidence, after defense evidence has been presented, he waives his objection to the earlier denial of his motion. In this circumstance, appellate review is limited to determining whether there was a manifest miscarriage of justice, that is, whether the record is devoid of evidence pointing to guilt." *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992) (internal citations and quotation marks omitted).

No. 10-31198

B. *Evidence of a Conspiracy*

To prove a conspiracy to possess with intent to distribute methamphetamine, the government must show: (1) the existence of an agreement between two or more persons to possess with intent to distribute methamphetamine; (2) that the defendant knew of the conspiracy and intended to join it; and (3) that the defendant participated in the conspiracy. *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence," and an "agreement may be inferred from a concert of action." *Id.* at 768-69 (internal citations and quotation marks omitted).

Sierra argues that, at most, the government demonstrated that she associated with individuals involved in a conspiracy, but that there is no evidence that she knowingly and voluntarily joined the conspiracy. We conclude that the record is far from devoid of evidence demonstrating that Sierra conspired with her co-defendants. The government introduced evidence of continued cooperation between Sierra and the Underwoods. Sierra sold the Underwoods substantial amounts of drugs on several occasions over an extended period of time, and, in turn, the Underwoods resold the drugs for profit. Susan testified that Sierra was the Underwoods' sole drug supplier from August 2008 through July 2009.[1] The Underwoods and Sierra coordinated their drug sales in advance; to conduct drug purchases from Sierra, either the Underwoods would travel to Dallas, Georgia to meet Sierra or Sierra would travel to Bossier City,

---

[1] Sierra asserts that the primary evidence supporting her conspiracy conviction is Susan Underwood's testimony, which Sierra asserts is unreliable due to Susan's history of drug use and motive to lie. Uncorroborated testimony from a co-conspirator, including one who has agreed to testify in exchange for leniency, may be constitutionally sufficient evidence to convict, provided the testimony is not factually insubstantial or incredible. *United States v. Westbrook*, 119 F.3d 1176, 1190 (5th Cir. 1997). Sierra has not demonstrated that Susan's testimony is factually insubstantial or incredible.

No. 10-31198

Louisiana to meet them. After Sierra was detained by police on May 26, Sierra and the Underwoods arranged an elaborate means of repayment to avoid police attention. For several months, the Underwoods wired money to Sierra via Wal-Mart MoneyGrams, sometimes addressing the MoneyGram to Sierra's son instead of Sierra, dividing a larger payment into two smaller payments, and using a false address to avoid detection.

In July 2009, Susan traveled to Georgia to meet Sierra and her son. Once there, the three acquired some methamphetamine, and Sierra and her son concealed the drugs inside a tire. Sierra, her son, and Susan then traveled to Bossier City to deliver the tire filled with methamphetamine to Jimmie. After police uncovered a substantial amount of cash in Sierra's possession, Susan executed an affidavit in which she falsely stated that she had given Sierra $1000.

Moreover, Sierra routinely fronted methamphetamine to the Underwoods. Fronting is "strong evidence of membership in a conspiracy because it indicates a strong level of trust and an ongoing, mutually dependent relationship." *United States v. Posada-Rios*, 158 F.3d 832, 860 (5th Cir. 1998) (internal quotation marks omitted). The record is not devoid of evidence supporting Sierra's conspiracy conviction, and she has not demonstrated "a manifest miscarriage of justice." *Daniel*, 957 F.2d at 164.

C. *Evidence of Possession*

Sierra contends that her convictions for possession with intent to distribute on May 12 and May 26 are unsupported by the evidence. To establish possession of methamphetamine with intent to distribute, the government must prove that the defendant (1) knowingly (2) possessed methamphetamine (3) with intent to distribute it. *United States v. Medina*, 161 F.3d 867, 873 (5th Cir. 1998).

No. 10-31198

Susan testified that the Underwoods purchased drugs exclusively from Sierra during the relevant period. Susan attested that Sierra traveled to the Underwood residence in Bossier City to sell methamphetamine to the Underwoods on two separate occasions in May, although she did not recall the exact dates. Twice in May, once on May 12 and once on May 26, Jimmie contacted an undercover agent and relayed to the agent that he had methamphetamine available for purchase. From this testimony, the jury could infer that on or about May 12 and May 26, Sierra traveled to the Underwood residence with methamphetamine that she intended to sell to the Underwoods, who in turn sold it to the undercover agent.

This conclusion is further supported by other evidence in the record. On May 12, the undercover agent arrived at the Underwood residence to purchase methamphetamine. Outside the residence, he observed a car with Georgia license plates and stated that a young man with red hair and "spacer earrings" answered the door. This person matches the description of Sierra's son, who frequently accompanied her on her drug dealing trips to Bossier City. There was no evidence that Sierra's son had ever traveled alone to sell methamphetamine to the Underwoods.

Moreover, on May 26, when the agent arrived at the Underwood residence, a car registered to Sierra was parked in front of the house and the agent observed Sierra inside the house.  The undercover agent paid the Underwoods for the methamphetamine that he purchased using $4000 in marked bills. After Sierra left the Underwood residence on the evening of May 26, she was detained by police for speeding. Sierra consented to a search of her car, and police found $7886 in cash in her purse, among other items.  Nearly $4000 of the money discovered in Sierra's car was later identified as the same marked money used by the undercover agent to purchase methamphetamine from the Underwoods

on May 26. The record is not devoid of evidence supporting Sierra's two convictions for possession of methamphetamine with intent to distribute.

## II. *Evidence of Drug Ledgers*

Sierra contends that under Federal Rule of Evidence 404(b), the trial court clearly erred in permitting the government to introduce into evidence two notebooks found by police in Sierra's car and expert testimony by a federal agent that these notebooks were "drug ledgers" used by Sierra to record sales of illegal drugs. According to Sierra, this evidence was extrinsic to the charged offenses and constituted "improper evidence of alleged 'other crimes' [introduced by the government] for the purpose of proving that Sierra acted in conformity therewith."

As Sierra did not raise this argument in the district court, we review it for plain error. FED. R. EVID. 103; *United States v. John*, 597 F.3d 263, 282 (5th Cir. 2010). Plain error review has four prongs: (1) there was an error; (2) the error is clear or obvious; (3) the error affected the defendant's substantial rights; and (4) a court may exercise its discretion to correct the error "only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *John*, 597 F.3d at 284 n.91 (alteration in original) (internal quotation marks omitted).

Rule 404(b) precludes the admission of evidence "of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." We note, however, that Rule 404(b) only limits the admissibility of extrinsic evidence, not intrinsic evidence of the crime charged. *See United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007); *see also United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994) ("The evidence admitted was not extrinsic to the offenses charged, thus consideration of its admissibility pursuant to Rule 404(b) is unnecessary."). The admission of evidence tending to prove the crime charged is not precluded by Rule 404(b) simply because it also

implicates a defendant in other crimes. *See, e.g.*, *United States v. Lamp*, 779 F.2d 1088, 1095 (5th Cir. 1986).

Even assuming, however, that the district court plainly erred in admitting the drug ledgers, Sierra has not shown that the error affected her substantial rights. "To meet this standard the proponent of the error must demonstrate a probability 'sufficient to undermine confidence in the outcome.'" *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). Considering the extent of the other evidence presented against Sierra, she has not demonstrated that the outcome of her trial would likely have been different had the drug ledgers not been admitted. *See United States v. Ricardo*, 472 F.3d 277, 286 (5th Cir. 2006) (defendants' substantial rights not affected where, "in light of the substantial amount of evidence . . . presented against [them], . . . the outcome of the trial would not have been different"). Because the alleged error did not affect Sierra's substantial rights, she is not entitled to relief on plain error review.

III. *Photographs of Syringe*

Sierra asserts that the district court plainly erred in admitting photographs depicting a syringe discovered by police in Sierra's car on May 26. Although the government had agreed not to introduce testimony regarding the syringe, it nevertheless introduced into evidence two photographs depicting the syringe: one photograph showing both the marked money and the syringe in Sierra's purse and a second photograph showing all of the items recovered from Sierra's car, including the money and the syringe. Neither party introduced any testimony regarding the syringe.

Since Sierra failed to object to the photographs in the trial court, the court reviews this argument for plain error as well. FED. R. EVID. 103; *John*, 597 F.3d at 284 n.91. Sierra contends that the photographs were unduly prejudicial under Federal Rule of Evidence 403. As with the drug ledgers, even if we assume that

the admission of these photographs was clearly erroneous, Sierra is still not entitled to relief under plain error review because she has not shown that the admission of this evidence affected her substantial rights. After a review of the record, we are satisfied that the introduction of these photographs does not undermine confidence in the jury's verdict. "Because the prosecution did not emphasize [this evidence] in any way during trial and because the evidence against [Sierra] was strong, the jury likely disregarded [this evidence], meaning that the outcome of the trial would not have been different but for this error." *Ricardo*, 472 F.3d at 285. Sierra is therefore not entitled to relief.

## CONCLUSION

For the reasons stated above, we AFFIRM Sierra's convictions.